**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**26-CR-20279-MORENO/D'ANGELO**
Case No. _____

18 U.S.C. § 371
7 U.S.C. § 2024(b)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
31 U.S.C. § 5324(a)(3)
7 U.S.C. § 2024(f)
18 U.S.C. § 982(a)(1)
31 U.S.C. § 5317(c)(1)(A)

**UNITED STATES OF AMERICA**

**v.**

**RAJAIE AHMAD ALI,**
**SAMI JAMHOUR,**
**ADEL AMRO, and**
**CRISTIAN AMARO,**

      **Defendants.**

_____/

FILED BY_____**BM**_____D.C.

*Jul 8, 2026*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**INDICTMENT**

The Grand Jury charges that:

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

**THE SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM**

1.     The Supplemental Nutrition Assistance Program ("SNAP") is a federal assistance program aimed at improving the health and nutrition of low and middle-income families.  The Food and Nutrition Service ("FNS"), an agency of the United States Department of Agriculture, oversees the SNAP.  Through the SNAP, benefits or "food stamps" are issued to individuals in households certified to be in need of food assistance.

2.　　Historically, food stamps operated as physical paper coupons, but SNAP benefits are now distributed digitally using an electronic benefit transfer ("EBT") card, which operates like a debit card.

3.　　While the U.S. government provides the federal funding and baseline rules for SNAP, individual states are responsible for the day-to-day administration including determining eligibility, processing applications, and issuing benefits.  In the State of Florida, the SNAP is administered by the Florida Department of Children and Families ("DCF") on behalf of the federal government.

4.　　In the State of Florida, an eligible SNAP recipient is given access to an account to which EBT benefits are automatically credited on a monthly basis.  To access electronic benefits for the purchase of eligible food items, the recipients are given an authorization card, called an EBT card, which operates like a debit card and has a magnetic strip on its back containing specific identifying data.  Recipients also receive a four-digit personal identification number (a "PIN") which is used to access benefits on the card.

5.　　Under federal law and regulations, food stamp benefits may only be used toward the purchase of eligible foods for the eligible household.  Food stamp benefits may not be exchanged for cash.  The process of exchanging food stamp benefits for a lesser amount of cash, commonly referred to as "discounting" or "trafficking," is prohibited and criminally punishable.

6.　　To become eligible as a vendor to accept SNAP benefits, candidate store owners in Florida are required to complete, sign, and submit to FNS a SNAP application.

7.　　As part of the SNAP vendor application, the owner/manager of a business must acknowledge receiving mandatory SNAP retailer training.  This SNAP retailer training is designed to educate and train store owners/management personnel on the proper procedures for the

2

acceptance and redemption of SNAP benefits, including the prohibition on trafficking in food stamp benefits for cash. Store owners/managers are responsible for training their employees about the proper procedures for the program. Retailers may lose their authorization to redeem SNAP benefits or may no longer qualify for participation in the program if they break program rules.

8.     If FNS determines the store to be qualified, the store is assigned an authorization number (an "FNS number"). The store is then eligible to participate in SNAP and redeem food stamp benefits through an EBT point of sale terminal ("POS") that can process EBT transactions. SNAP regulations prohibited retailers from sharing their POS terminals with other retailers.

9.     Retailers authorized to participate in the SNAP designate a bank account to receive SNAP benefit payments. The transfer of funds from SNAP benefit transactions are normally deposited on the following day, commonly known as "batch" payments, e.g., instead of ten $100 deposits, one $1,000 deposit is received.

10.     In a typical food stamp transaction, a SNAP recipient will provide an EBT card for the purchase of eligible food items to a cashier at an authorized retail establishment. The recipient will then enter his or her PIN on a keypad to obtain authorization for the purchase. Thereafter, the POS terminal of the third-party processing provider would record: (1) the FNS store authorization number; (2) the EBT card number; (3) the time and date of the transaction; and (4) the amount debited from the recipient card. The retrieved data is wired and transmitted through the third-party processor to a DCF contractor Fidelity National Information Services ("FIS") for processing, approval or denial, and, ultimately, payment to the authorized retailer once approved.

11.     FIS processed the transactions using servers in Wisconsin or Arizona.

3

## THE DEFENDANTS AND RELEVANT ENTITIES

12.      **RAJAIE AHMAD ALI** was a Jordanian national and resident of Broward County, Florida.

13.      Itching Palm, Inc. ("Itching Palm") was a Florida corporation doing business as "Brown Sugar" with its principal place of business in Lauderhill, Florida. **RAJAIE AHMAD ALI** was the President and registered agent of Brown Sugar.

14.      On or about July 10, 2018, **RAJAIE AHMAD ALI** applied on behalf of Itching Palm to the FNS for authorization to participate as a retailer accepting SNAP benefits.  In the application, **ALI** certified that: (a) he understood the rules and regulations of the SNAP; and (b) he was responsible for ensuring that all owners and employees were trained in the rules and regulations of the SNAP.

15.      **SAMI JAMHOUR** was an Israeli national and resident of Broward County, Florida.

16.       LAIH Corporation was a Florida corporation doing business as "Kwik Stop" with its principal place of business in Miami, Florida.  **SAMI JAMHOUR** was President and registered agent of Kwik Stop with exterior pictured below:



4

17.    **ADEL AMRO** was a resident of Miami-Dade County, Florida and an employee of Kwik Stop.

18.    **CRISTIAN AMARO** was a resident of Miami-Dade County, Florida.

19.    The Quickie Mini Market, Inc., was a Florida corporation with its principal place of business in Hollywood, Florida. **CRISTIAN AMARO** was the President and registered agent of the Quickie Mini Market, Inc.

20.    On or about February 10, 2025, **CRISTIAN AMARO** applied on behalf of Quickie Mini Market to the FNS for authorization to participate as a retailer accepting SNAP benefits. In the application, **AMARO** certified that: (a) he understood the rules and regulations of the SNAP; and (b) he was responsible for ensuring that all owners and employees were trained in the rules and regulations of the SNAP.

21.    Bank 1 was a federally-insured financial institution with headquarters in Pennsylvania and branches in the Southern District of Florida.

22.    Bank 2 was a federally-insured financial institution with headquarters in North Carolina and branches in the Southern District of Florida.

23.    Bank 3 was a federally-insured financial institution with headquarters in New Jersey and branches in the Southern District of Florida.

24.    Bank 4 is a federally-insured financial institution with headquarters in Florida and branches in the Southern District of Florida.

25.    Bank 5 is a federally-insured financial institution with headquarters in New York and branches in the Southern District of Florida.

26.    Bank 6 is a federally-insured financial institution with headquarters in North Carolina and branches in the Southern District of Florida.

27. Bank 7 is a federally-insured financial institution with headquarters in California and branches in the Southern District of Florida.

28. **RAJAIE AHMAD ALI** maintained a bank account in the name of Itching Palm at Bank 1, Bank 2, Bank 3 (the "Ali Bank 3 Account"), and Bank 7 (the "Ali Bank 7 Account").

29. **SAMI JAMHOUR** maintained a bank account in the name of LAIH Corporation at Bank 1, Bank 3 (the "JAMHOUR Bank 3 Account"), and 6 (the "JAMHOUR Bank 6 Account" and "JAMHOUR Bank 6 Account 2").

30. **ADEL AMRO** maintained a personal bank account at Bank 5 (the "AMRO Bank 5 Account").

31. **CRISTIAN AMARO** maintained a bank account in the name of Quickie Mini Market at Bank 2 (the "AMARO Bank 2 Account.").

32. Company 1 is a Florida-based title company with headquarters in Coral Springs, Florida.

## COUNT 1
### Conspiracy to Commit Offenses Against the United States
### (18 U.S.C. § 371)

1. Paragraphs 1 through 32 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. From on or about July 11, 2019, through on or about May 1, 2026, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAJAIE AHMAD ALI,**
**SAMI JAMHOUR,**
**ADEL AMRO, and**
**CRISTIAN AMARO,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that

6

is, to knowingly use, transfer, acquire, alter, and possess benefits, that is, access devices, EBT cards, and coupons of aggregate value of $5,000 or more, in a manner contrary to Chapter 51 of Title 7, United States Code and the regulations issued pursuant to that Chapter, that is, Section 278.2, in that the defendants directly and indirectly purchased EBT food stamp benefits for cash, in violation of Title 7, United States Code, Section 2024(b)(1) and Title 7, Code of Federal Regulations, Section 278.2(a).

## OBJECT AND PURPOSE OF THE CONSPIRACY

3.      It was the object and purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by (a) exchanging EBT food stamp benefits for cash at **SAMI JAMHOUR's** store at a discounted rate; (b) receiving the funds in the bank accounts of **RAJAIE AHMAD ALI** and **CRISTIAN AMARO**; and (c) using the proceeds of the fraud for their own personal benefit and to further the scheme.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among other things, the following:

4.      **RAJAIE AHMAD ALI** knowingly provided **SAMI JAMHOUR** his POS terminal for use at Kwik Stop in SNAP trafficking transactions.

5.      **CRISTIAN AMARO** knowingly provided **SAMI JAMHOUR** his POS terminal for use at Kwik Stop in SNAP trafficking transactions.

6.      **ADEL AMRO** and other co-conspirators identified food stamp benefit recipients willing to falsely and fraudulently sell their EBT food stamp benefits at a discounted rate for cash. **SAMI JAMHOUR** and **AMRO** instructed Kwik Stop employees to engage in false and fraudulent

7

transactions wherein employees would make it appear as though food stamp recipients were making legitimate purchases of eligible food items.

7.    **ADEL AMRO** and other co-conspirators would falsely and fraudulently charge an inflated amount on the recipient's EBT food stamp card by swiping the recipient's EBT card through a POS terminal.  **AMRO** and other co-conspirators would then pay the EBT card holder in cash in the amount of approximately 50% of the EBT food stamp benefits redeemed through the card.

8.    **RAJAIE AHMAD ALI, SAMI JAMHOUR, CRISTIAN AMARO,** and **ADEL AMRO,** and other co-conspirators caused nearly $20 million in EBT transactions at the Kwik Stop store on the POS terminals of **ALI** and **AMARO**.

9.    Through these transactions, **RAJAIE AHMAD ALI, SAMI JAMHOUR, CRISTIAN AMARO**, **ADEL AMRO**, and other co-conspirators falsely and fraudulently redeemed from the United States government the full amount of the EBT food stamp benefits illegally purchased and caused this money to be deposited into bank accounts controlled by **ALI** and **AMARO**.

10.    **RAJAIE AHMAD ALI** received approximately $18 million in EBT proceeds and withdrew approximately $12 million in cash to provide to Kwik Stop to promote the ongoing conspiracy by providing cash for EBT recipients.

11.    **CRISTIAN AMARO** received approximately $1 million in EBT proceeds and withdrew approximately $600,000 in cash to provide to Kwik Stop to promote the ongoing conspiracy by providing cash for EBT recipients.

12.     **RAJAIE AHMAD ALI, SAMI JAMHOUR, CRISTIAN AMARO, ADEL AMRO**, and other co-conspirators used proceeds from the fraudulent EBT fraud scheme for their own personal benefit and to promote the scheme.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1.     Beginning at least as early as on or about July 11, 2019, **RAJAIE AHMAD ALI** provided, or caused to be provided, his FNS-authorized POS terminal to be used at Kwik Stop, the store owned by **SAMI JAMHOUR**.

2.     On or about December 17, 2019, a co-conspirator employee of Kwik Stop exchanged $100 in cash for $199 in EBT food stamp benefits, using the terminal registered to **RAJAIE AHMAD ALI**, at Kwik Stop, the store owned by **SAMI JAMHOUR**.

3.     On or about March 10, 2020, a co-conspirator employee of Kwik Stop exchanged $100 in cash for $199.75 in EBT food stamp benefits using the terminal registered to **RAJAIE AHMAD ALI**, at Kwik Stop, the store owned by **SAMI JAMHOUR**.

4.     On or about September 12, 2023, a co-conspirator employee of Kwik Stop exchanged $50 in cash for $99.72 in EBT food stamp benefits using the terminal registered to **RAJAIE AHMAD ALI**, at Kwik Stop, the store owned by **SAMI JAMHOUR**.

5.     On or about May 7, 2025, **ADEL AMRO** exchanged $120 in cash for $238.45 in EBT food stamp benefits, using the terminal registered to **RAJAIE AHMAD ALI**, at Kwik Stop, the store owned by **SAMI JAMHOUR**.

6.      At a date unknown to the grand jury, but at least by on or about June 12, 2025—during the period during which Brown Sugar was closed for renovations—**CRISTIAN AMARO** provided, or caused to be provided, his FNS-authorized POS terminal to Kwik Stop, the store owned by **SAMI JAMHOUR**.

7.      On or about September 3, 2025, a co-conspirator employee of Kwik Stop exchanged $80 in cash for $161.99 in EBT food stamp benefits using the terminal registered to **CRISTIAN AMARO**, at Kwik Stop, the store owned by **SAMI JAMHOUR**.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Food Stamp/EBT Fraud
### (7 U.S.C. § 2024(b)(1) & 7 C.F.R. § 278.2(a))

On or about May 7, 2025, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendant,

### ADEL AMRO,

did knowingly use, transfer, acquire, alter, and possess benefits, that is, access devices, EBT cards, and coupons of value of more than $100, in a manner contrary to Chapter 51 of Title 7, United States Code and the regulations issued pursuant to that Chapter, that is, Section 278.2, in that the defendant directly and indirectly purchased EBT food stamp benefits for cash, that is, $238.45 in benefits in exchange for $120.00 in cash, in violation of Title 7, United States Code, Section 2024(b)(1) and Title 7, Code of Federal Regulations, Section 278.2(a).

## COUNT 3
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.      Paragraphs 1 through 32 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     From on or about July 11, 2019, through on or about May 1, 2026, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**RAJAIE AHMAD ALI,**
**SAMI JAMHOUR, and**
**CRISTIAN AMARO,**

did knowingly and voluntarily combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:

a.     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of any specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.     to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some of unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is food stamp fraud, in violation of Title 7, United States Code, Section 2024(b).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 4–8
### Engaging in Transactions in Criminally Derived Property
### (18 U.S.C. § 1957(a))

1.      Paragraphs 1 through 30 of the General Allegations section of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates as to each count set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants, as listed below, did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as set forth below:

| Count | Defendant | Approx. Date | Description of Monetary Transaction |
|---|---|---|---|
| 4 | RAJAIE AHMAD ALI and SAMI JAMHOUR | December 22, 2022 | Wire transfer of $97,000 by **RAJAIE AHMAD ALI** from the **ALI** Bank 3 Account to Company 1's Bank 4 account to purchase a property for **SAMI JAMHOUR**. |
| 5 | RAJAIE AHMAD ALI | March 17, 2025 | Transfer of $85,000 by **RAJAIE AHMAD ALI** from the **ALI** Bank 3 Account to **ALI's** personal account at Bank 3. |
| 6 | RAJAIE AHMAD ALI and SAMI JAMHOUR | January 3, 2023 | Transfer of $15,000 by **RAJAIE AHMAD ALI** from **ALI's** Bank 3 Account to Company 1's Bank 4 account to purchase a property for **SAMI JAMHOUR**. |
| 7 | CRISTIAN AMARO and ADEL AMRO | October 20, 2025 | Transfer of $11,256 by **CRISTIAN AMARO** from the **AMARO** Bank 2 Account to the **AMRO** Bank 5 Account. |
| 8 | CRISTIAN AMARO and ADEL AMRO | November 17, 2025 | Transfer of $15,929 by **CRISTIAN AMARO** from the **AMARO** Bank 2 Account to the **AMRO** Bank 5 Account. |

**COUNTS 9–19**
**Structuring**
**(31 U.S.C. § 5324(a)(3))**

1.     Paragraphs 1 through 32 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates as to each count set forth below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants, as set forth below, did knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, structure and assist in structuring a transaction with one or more domestic financial institutions, as set forth below:

| Count | Defendant | Transaction |
|---|---|---|
| 9 | **RAJAIE AHMAD ALI** | August 22, 2022, withdrawal of $7,500 from **ALI** Bank 3 Account; August 22, 2022, withdrawal of $1,006.95 from **ALI** Bank 3 Account; August 23, 2022, withdrawal of $7,500 from **ALI** Bank 3 Account; August 23, 2022, withdrawal of $1,006.95 from **ALI** Bank 3 Account; August 24, 2022, withdrawal of $7,500 from **ALI** Bank 3 Account; August 25, 2022, withdrawal of $7,500 from **ALI** Bank 3 Account; August 25, 2022, withdrawal of $606.95 from **ALI** Bank 3 Account; August 25, 2022, withdrawal of $506.95 from **ALI** Bank 7 Account; August 26, 2022, withdrawal of $7,500 from **ALI** Bank 3 Account; August 26, 2022, withdrawal of $706.95 from **ALI** Bank 3 Account; August 26, 2022, withdrawal of $506.95 from **ALI** Bank 3 Account; August 26, 2022, withdrawal of $506.95 from **ALI** Bank 7 Account. |
| 10 | **RAJAIE AHMAD ALI** | October 3, 2023, withdrawal of $6,000 from **ALI** Bank 3 Account; October 3, 2023, withdrawal of $940 from **ALI** Bank 7 Account; October 4, 2023, withdrawal of $1,006.95 from **ALI** Bank 3 |

13

| Count | Defendant | Transaction |
|---|---|---|
| | | Account;<br>October 4, 2023, withdrawal of $940 from **ALI** Bank 7 Account;<br>October 5, 2023, withdrawal of $6,000 from **ALI** Bank 3 Account;<br>October 6, 2023, withdrawal of $6,500 from **ALI** Bank 3 Account;<br>October 6, 2023, withdrawal of $1,000 from **ALI** Bank 3 Account;<br>October 6, 2023, withdrawal of $940 from **ALI** Bank 7 Account. |
| 11 | **RAJAIE AHMAD ALI** | June 5, 2024, withdrawal of $4,500 from **ALI** Bank 3 Account;<br>June 5, 2024, withdrawal of $4,500 from **ALI** Bank 7 Account;<br>June 6, 2024, withdrawal of $4,800 from **ALI** Bank 3 Account;<br>June 6, 2024, withdrawal of $4,800 from **ALI** Bank 7 Account;<br>June 7, 2024, withdrawal of $4,000 from **ALI** Bank 7 Account;<br>June 7, 2024, withdrawal of $4,000 from **ALI** Bank 3 Account;<br>June 10, 2024, withdrawal of $8,000 from **ALI** Bank 3 Account;<br>June 10, 2024, withdrawal of $1,007.95 from **ALI** Bank 3 Account;<br>June 10, 2024, withdrawal of $1,007.95 from **ALI** Bank 3 Account;<br>June 10, 2024, withdrawal of $5,800 from **ALI** Bank 7 Account;<br>June 10, 2024, withdrawal of $907.95 from **ALI** Bank 7 Account;<br>June 10, 2024, withdrawal of $907.95 from **ALI** Bank 7 Account. |
| 12 | **RAJAIE AHMAD ALI** | January 6, 2025, withdrawal of $8,500 from **ALI** Bank 3 Account;<br>January 7, 2025, withdrawal of $9,500 from **ALI** Bank 3 Account;<br>January 8, 2025, withdrawal of $6,500 from **ALI** Bank 3 Account;<br>January 8, 2025, withdrawal of $1,107.95 from **ALI** Bank 3 Account;<br>January 8, 2025, withdrawal of $1,007.95 from **ALI** Bank 3 Account. |
| 13 | **SAMI JAMHOUR** | August 17, 2021, deposit of $9,000 in **JAMHOUR** Bank 6 Account;<br>August 17, 2021, deposit of $9,000 in **JAMHOUR** Bank 6 Account. |
| 14 | **SAMI JAMHOUR** | July 24, 2023, deposit of $5,400 into **JAMHOUR** Bank 6 Account;<br>July 24, 2023, deposit of $5,000 into **JAMHOUR** Bank 6 Account 2. |
| 15 | **SAMI JAMHOUR** | December 4, 2023, deposit of $6,900 into **JAMHOUR** Bank 3 Account;<br>December 4, 2023, deposit of $3,900 into **JAMHOUR** Bank 6 Account 2. |
| 16 | **CRISTIAN AMARO** | July 28, 2025, withdrawal of $9,200 from **AMARO** Bank 2 Account;<br>July 28, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; |

| Count | Defendant | Transaction |
|---|---|---|
| | | July 28, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 28, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 29, 2025, withdrawal of $9,550 from **AMARO** Bank 2 Account; July 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 30, 2025, withdrawal of $9,450 from **AMARO** Bank 2 Account; July 30, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 30, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; July 31, 2025, withdrawal of $8,500 from **AMARO** Bank 2 Account; |
| 17 | **CRISTIAN AMARO** | September 22, 2025, withdrawal of $9,500 from **AMARO** Bank 2 Account; September 22, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 22, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 23, 2025, withdrawal of $9,600 from **AMARO** Bank 2 Account; September 23, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 23, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 24, 2025, withdrawal of $8,600 from **AMARO** Bank 2 Account; September 25, 2025, withdrawal of $9,400 from **AMARO** Bank 2 Account; September 25, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 25, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 26, 2025, withdrawal of $9,600 from **AMARO** Bank 2 Account; September 26, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 26, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; |

| Count | Defendant | Transaction |
|---|---|---|
| | | September 29, 2025, withdrawal of $9,800 from **AMARO** Bank 2 Account; September 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 29, 2025, withdrawal of $500 from **AMARO** Bank 2 Account; September 30, 2025, withdrawal of $9,100 from **AMARO** Bank 2 Account; September 30, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; September 30, 2025, withdrawal of $500 from **AMARO** Bank 2 Account. |
| 18 | **CRISTIAN AMARO** | October 14, 2025, withdrawal of $9,400 from **AMARO** Bank 2 Account; October 14, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 14, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 14, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 14, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 14, 2025, withdrawal of $300 from **AMARO** Bank 2 Account; October 15, 2025, withdrawal of $9,500 from **AMARO** Bank 2 Account; October 15, 2025, withdrawal of $600from **AMARO** Bank 2 Account; October 15, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 15, 2025, withdrawal of $300 from **AMARO** Bank 2 Account; October 16, 2025, withdrawal of $9,400 from **AMARO** Bank 2 Account; October 16, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; October 16, 2025, withdrawal of $600 from **AMARO** Bank 2 |

16

| Count | Defendant | Transaction |
|-------|-----------|-------------|
|       |           | Account; October 16, 2025, withdrawal of $300 from **AMARO** Bank 2 Account. |
| 19 | **CRISTIAN AMARO** | November 17, 2025, withdrawal of $9,300 from **AMARO** Bank 2 Account; November 17, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; November 18, 2025, withdrawal of $600 from **AMARO** Bank 2 Account; November 18, 2025, withdrawal of $9,600 from **AMARO** Bank 2 Account. |

In violation of Title 31, United States Code, Section 5324(a)(3).

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **RAJAIE AHMAD ALI, SAMI JAMHOUR, ADEL AMRO,** and **CRISTIAN AMARO**, have an interest.

2.      Upon conviction of a violation, or a conspiracy to violate, Title 7, United States Code, Section 2024(b)(1), as alleged in the Indictment, the defendant shall forfeit all property, real or personal, used in a transaction or attempted transaction, to commit, or to facilitate the commission of such violation. The defendant shall further forfeit all property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 7, United States Code, Section 2024(f).

3.      Upon conviction of a violation of Title 18, United States Code, Sections 1957 or 1956(h), as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

17

4.      Upon conviction of a violation of Title 31, United States Code, Section 5324, as alleged in this Indictment, the defendant shall forfeit to the United States property, real or personal, involved in the commission of the offense(s), in violation of Title 31, United States Code, Section 5324, and any property traceable thereto, pursuant to Title 31, United States Code, Section 5317(c)(1)(A).

All pursuant to Title 7, United States Code, Section 2024(f); Title 18, United States Code, Section 982(a)(1); Title 31, United States Code, Section 5317(c)(1)(A); and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

_____
DANIEL ROSENFELD
ASSISTANT UNITED STATES ATTORNEY

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.

Rajaie Ahmad Ali, Sami Jahmour,
Adel Amro, Cristian Amaro,

_____ /
Defendants.

**CASE NO.** __26-CR-20279-MORENO/D'ANGELO__

### CERTIFICATE OF TRIAL ATTORNEY

**Superseding Case Information:**

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total Number of New Counts _____

**Court Division** (select one)

☒ Miami     ☐ Key West     ☐ FTP
☐ FTL        ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.

3. Interpreter: (Yes or No) __No__
   List language and/or dialect: _____

4. This case will take ___5___ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    ☒  0 to  5 days              ☐ Petty
   II   ☐  6 to 10 days             ☐ Minor
   III  ☐ 11 to 20 days            ☐ Misdemeanor
   IV   ☐ 21 to 60 days           ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes, Judge _____ Case No._____
7. Has a complaint been filed in this matter? (Yes or No) __No__
   If yes, Judge _____ Magistrate Case No._____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) __No__
   If yes, Judge _____ Case No._____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) __No__
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) __No__
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? __No__
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? __Yes__
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? __No__
17. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? __No__

By: _____

Daniel Rosenfeld
Assistant United States Attorney
SDFL Court ID No.     A5503081

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:**   **RAJAIE AHMAD ALI**

**Case No:**

Count #: 1

Conspiracy to Commit an Offense Against the United States

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000

Count #: 3

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or the higher of twice the gross gain or twice the gross loss

Count #: 4–6

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or the higher of twice the gross gain or twice the gross loss

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   __RAJAIE AHMAD ALI__

**Case No:**

Count #: 9–12

Structuring

Title 31, United States Code, Section 5324(a)(3)

* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 *or the* higher of twice the gross gain or twice the gross loss

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   <u>SAMI JAMHOUR</u>

**Case No:**

Count #: 1

Conspiracy to Commit an Offense Against the United States

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000

Count #: 3

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000 or the higher of twice the gross gain or twice the gross loss

Count #: 4; 6

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000 or the higher of twice the gross gain or twice the gross loss

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   SAMI JAMHOUR

**Case No:**

Count #: 13–15

Structuring

Title 31, United States Code, Section 5324(a)(3)

* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or the higher of twice the gross gain or twice the gross loss

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>**PENALTY SHEET**</u>

**Defendant's Name:**   <u>**ADEL AMRO**</u>

**Case No:**   _____

Count #: 1

<u>Conspiracy to Commit an Offense Against the United States</u>

<u>Title 18, United States Code, Section 371</u>
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000

Count #: 2

<u>Food Stamp Fraud</u>

<u>Title 7, United States Code, Section 2024(b)(1)</u>
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000

Count #: 7–8

<u>Money Laundering</u>

<u>Title 18, United States Code, Section 1957</u>
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000 or the higher of twice the gross gain or twice the gross loss

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:**   <u>CRISTIAN AMARO</u>

**Case No:**   _____

Count #: 1

Conspiracy to Commit an Offense Against the United States

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000

Count #: 3

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or the higher of twice the gross gain or twice the gross loss

Count #: 7–8

Money Laundering

Title 18, United States Code, Section 1957
* **Max. Term of Imprisonment:** 10 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:** $250,000 or the higher of twice the gross gain or twice the gross loss

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   **CRISTIAN AMARO**

**Case No:**

Count #: 16–19

Structuring

Title 31, United States Code, Section 5324(a)(3)

* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Term of Supervised Release:** 3 years
* **Mandatory Min. Term of Supervised Release:** N/A
* **Max. Fine:**  $250,000 or the higher of twice the gross gain or twice the gross loss

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**